of Washington, where she previously served as Chief Judge, and the very distinguished Judge Rothstein also had the honor of serving as Director of the Federal Judicial Center, which is the education and research agency for the federal courts, created by Congress in 1967 to promote improvements in the administration of the United States courts. We're very grateful that Judge Rothstein is with us this week to help us decide these cases. Welcome. Thank you. And we have two that are scheduled for oral argument this morning. The first is Lillian B. v. Gwinnett County School District. I see Mr. Goldberg is here and ready to go, and Ms. Kensinger is here for the school district. And Mr. Goldberg, you may begin. May it please the court, I'm Ralph Goldberg and I represent Lillian B. This is the second appearance of this case before this court. The last time it appeared, it was on appeal of a dismissal for failure for judgment on the pleadings. This court reversed because no answer had been filed. In its opinion, the court said, the facts of this case as drawn from the complaint are straightforward. Richard Brown's six-year-old daughter, Lillian, attends school at the Gwinnett County School District. Lillian suffers from extreme food allergies. Her allergies are so bad that her parents don't want her eating the school meals prepared by the district. Instead, each day they prepare a homemade allergen-free lunch for her to eat at school. The homemade meal gets cold before lunchtime, meaning it is unappetizing and potentially unsafe by the time Lillian has a chance to eat it. So her mother wants to bring a microwave to the school and have them heat up the allergen-free lunch that her mother provides. Yes. Yeah. And so the district court looked at the complaint and has come to the conclusion that the complaint doesn't really have any allegations to establish a duty on the part of the school district to provide something that the law doesn't require. Well, Your Honor . . . And that by doing this, by bringing or proposing to bring this microwave, she's actually opted out of the school lunch program. Your Honor, opted out . . . Well, Your Honor, she hasn't opted out. Opted out implies that what's being done already meets the standards. In this case, there's no record whatsoever to show that the school district is meeting the standards. I started off by pointing out what the court had said below, I mean before, because I think that it was a signal to this district court that she did in fact state a cause of action and that she'd get on with the merits. Now, Judge Anderson, you were on the panel. You know what the discussion was behind closed doors. I don't. But it seems to me that was a signal. I don't think you're perceiving it quite right. What we actually do is look at the complaint and I don't see in your complaint any allegation that the school did not offer allergen-free lunches to be prepared in the cafeteria. Your Honor, what is in the complaint is an allegation that after the father learned that the defendant's agents were not eating his food, his daughter's food, or observing her eating. And the point that he was making was that there's no way of, what's the word, ensuring that she is getting allergen-free food. It didn't say that. Your Honor, it disturbs me that in the red brief on appeal at pages 3, 9, 10 at the top and again 10 at the bottom, it repeatedly says that there's been no allegation that the school district refused to provide allergen-free lunches. And even before the first appeal, the district court had adopted that position at page 16 of docket 6, at page 4 and 5 of docket 16, where he said the plaintiff has not alleged that she's being denied access to the school lunch program. But notwithstanding all of that, you did not, either in your amended complaint docket 6 or the proposed amended complaint docket 36, you never alleged that the school district had refused to provide allergen-free lunches prepared in the cafeteria. So my assumption is that the school district did, in fact, during the negotiations, say we can prepare allergen-free lunches, but your client wanted to be absolutely sure and wanted to pack it themselves. What's wrong with my assessment? Well, Your Honor, I think that assumption is wrong because it reads the complaint against my client instead of in favor of my client, and it reads the complaint without taking the necessary inferences from the complaint. If, in fact, they were providing allergen-free food and ensuring her safety, this case would not have been brought. But the point is . . . So you are making a representation that they have not provided allergen-free lunches prepared in the cafeteria and that the counsel for the other side has misrepresented the facts repeatedly in the red brief? Your Honor, when I read the school district's brief, they say that they are required by a number of statutes and regulations, and what they focus on is heated food, and the regulations and statutes that they cite do require that. But all the regulations and statutes they cite do not discuss allergen-free food. There is nothing in the record, in the record, in the answer to the complaint, that says that they provide allergen-free food. Well, of course, it is your burden and not theirs, but let me say this. It seems to me if we take your position, you urge us to send it back because there are no inferences or there are no reasonable inferences or that we should not take reasonable inferences from the complaint that allergen-free foods were prepared, were offered to be prepared to her. If we vacate and send it back and it turns out that allergen-free lunches were, in fact, offered to be prepared for her, then it seems to me you would be subject to sanctions on remand. Your Honor— Are you willing to undertake that? Your Honor, I think the complaint goes broader than that. I think the point of the complaint is that the food is not necessarily safe because of the way it is handled, that because they do not ensure that—I mean, we're talking about a child who's at this point six or seven years old. So would it be a reasonable accommodation if the school said, we're going to provide her with a hot and nutritious allergen-free lunch, would that be a reasonable accommodation that would satisfy the—satisfy your client? Your Honor, it would be a reasonable accommodation if they would also provide someone to watch the child eat. Why is that necessary? Because, you know, students who are that young are always sharing food. My client's daughter does not eat alone. And because they're always sharing food, you know, this child has something that looks better than what you have. Let's trade. Well, your hypothesis is that the matter would be cured if the microwave were provided and her food was heated up. If she's not eating alone, she's going to take that same food and go into the lunchroom with the other children, and wouldn't that still present the same problem? Well, your Honor, I think the fact is that she'd be eating the food that was sent. And I think that that's the difference of the thing. She would be eating the food that her parents sent, and she would know that she should be eating the food that her parents sent. That I think is exactly the point. And why does that food have to be heated? Why can't she eat the food that was sent and just eat it without the microwaving part? Well, your Honor, the allegations of the complaint are that by the time she gets ready to eat it, that it gets cold and it becomes unappetizing and potentially unsafe. That's the allegations of the complaint. That's why she can't do that. It's absolutely clear as a matter of common sense. However, is it not that lunches could be prepared that would not be unsafe when they're cold? Is that not true? I do that every Saturday when I go fishing. I take a lunch and it's cold when I eat it. Well, your Honor, they could prepare, I guess they could prepare cold food. That's right. They could. But then we'd get to the situation where students who do not have her allergy get to eat heated food and she doesn't. And she doesn't only because of her disability. I think if you go back to the regulation which talks about maximizing, maximizing to the maximum extent appropriate to the needs of the handicapped person in question. She is not relegated to cold food all her life as punishment for the fact that she has an allergy that will cause her harm if in fact she eats the wrong food. That's the difference. She's not supposed to be treated differently because she has that allergy. And if you're saying that everybody else can get hot food and she has to have cold food, that's what you're doing. You, when you go on your fishing trip, get to make that decision. She doesn't. Under your hypothesis, she would have to eat cold food. Or take the food that the school offers, assuming that they did offer allergen-free lunches. Take the food that the school offers, assuming that somebody from the school will watch the student during lunch, yes. Before you conclude, let me just ask you one question about one of the other issues in the case. You didn't request compensatory damages in your complaint, right? Your Honor, I did not. Because you have the last sentence says, for such other and further relief as is just and proper, that's not enough? Your Honor, I think that is enough. But, Your Honor, I made a motion to amend and Judge Bunnell had two ways to deny it. He could have said that it was futile or he could have said that I had missed the 16, the Rule 16 scheduling deadline. In fact, he did say both. And he did say both, that's right. So the third section is directed to the Rule 16 argument. You get to decide whether or not it's futile. All right. Thank you. Mr. Goldberg, I think you've reserved some time for rebuttal. We'll hear from Ms. Kinsinger. May it please the Court. My name is Elizabeth Kinsinger and I represent the, aptly in this matter, the Gwinnett County School District. I think Your Honors have quickly ascertained the crux of the issue here, which is whether the complaint that is before you properly sets forth enough substantive allegations to support an obligation on the part of the school district to heat a student's lunch. I'm going to pepper both sides with questions and so you shouldn't assume what we're thinking from those questions.  Thank you, Your Honor. The Court is required to draw reasonable inferences from the facts in the complaint, isn't it? Yes. Yes, Your Honor. Okay. So, just to get into court, pass the complaint, all he has to do is to allege that there's a duty on the part of the school district to provide a reasonable accommodation for her disability and he's got facts in the complaint to support that, it seems to me. Well, Your Honor, there are a couple of Supreme Court cases that have addressed the type of substantive allegations that need to be present in a complaint to rise above that level of mere speculation and proving a plausible claim for relief. The two cases I'm referring to are Bell Atlantic Court v. Twombly and Ashcroft v. Iqbal. And both of those cases discuss in detail that a complaint must present more than just a formulaic recitation of the elements of the . . . Let me interrupt you, Counsel Kuss. I think we probably know the holdings in Iqbal and Twombly, but why can't we, since we are assuming everything in favor at this point, we don't know whether the school is capable of supplying an allergen-free lunch, do we, on this record? You don't have that in the record. That is correct. So, why shouldn't we be sending it back for some factual determinations here? For a couple of reasons, Your Honor. One is that when a complaint like this is so bare in its factual allegations, the government entity really shouldn't have to bear the burden of going through discovery. And both Ashcroft and Twombly talked about competent case management and whether the government officials where the allegations were really serious in those cases, whether the government should still have to burden the expense of discovery, even though the complaint was insufficient. When you look at this complaint and you look at what is alleged, there is nothing alleged about a program that the school district administers that the plaintiff or appellant here has been excluded from. Well, what about the lunch program? Can we not . . . The real issue in the case is, is there a reasonable inference from these complaint that the school district has not offered to provide allergen-free lunches to this plaintiff? No, Your Honor. I don't think that is a reasonable inference based on the very limited facts that are presented in this complaint, which are basically that the student has food allergies, that her parents prepare food for her to bring to greatly limit her allergies, and that they have requested that the school microwave that food. There are no allegations about the school lunch program. In fact, the school lunch program is not even mentioned in the complaint. Yes, but they talk about heated lunches. I mean, there is a reasonable inference he is talking about the school lunch program. And I do think drawing that inference is reasonable, that the program at issue here is the school lunch program and whether the . . . to provide allergen-free lunches. Because I think that is an essential element that would need to be pled in order to show how this student is being denied the benefits of, being excluded from, or being discriminated against in the application of a program. You should identify the program and then say how the student is unable to participate or how she has been excluded from or how she has been denied the benefits of that program. And those facts are simply not present here. Well, let's assume for now that we were going to say there was a sufficient inference from the complaint. The next question that comes up is, would it be a reasonable accommodation? The parents have offered to bring the microwave to pay for the heating of the lunches. What is the inconvenience to the school for doing that? Your Honor, there are a couple of . . . it goes beyond inconvenience to the school, Your Honor. This is one student. There are over 8,500 students in the school district who have a documented form of allergy that my client knows about. So when you look at one student and you provide that accommodation for one student, I think it reasonably follows that other students will want that same opportunity. There is no allegation that . . . We know that from this record that there are 8,500 other students in this school district that have a food allergy that need a hot lunch? That's not in the record because we don't have a lot of facts in the record. But in answering Judge Rothstein's question, which went kind of to facts outside the record, that's why I brought that particular matter up. I thought the question was asking me to kind of hypothesize as to what the inconveniences would be. But, I mean, all of the reasons I can state are facts that are not in the record in terms of the adequate amount of time, keeping the microwave itself sanitary and free from allergens, the fact that non-disabled students don't get to microwave their food. But isn't all of that just showing that there is really insufficient information to be making a judgment on the pleadings? That we need more facts? That it should be sent back for more facts? No, Your Honor, because when you look at the complaint that's here and the standard that plaintiff is required to plead, because that's who drafts the complaint. They bring it forward. They set their claims forward. They have to plausibly plead something that shows that the school district has some sort of liability. And when you look at the two statutes . . . If we can reasonably infer from this complaint that the school district has not offered to provide allergen-free lunches prepared in the cafeteria, then it seems to me they have plead enough, have they not? If there is a reasonable inference that the school district has not provided or offered to provide allergen-free lunches prepared in the cafeteria, then she would in effect have been excluded from the school lunch program, would she not? If you inferred that the school district has not offered allergen-free lunches, then yes, I would agree that that would . . . I know that's not in the record, but if it has, in fact, and if Mr. Goldberg insists on our sending it back, it does seem to me he would be subject to sanctions on remand. Well, I can't comment on the sanctions issue at this point, but yes, my client has and does make available allergen-free lunches in its cafeteria. And quite frankly, reading the regulations that are at issue here in terms of what school districts must offer in terms of providing a lunch for school districts, I have been unable to find a requirement that the lunches are, in fact, heated, but there are a number of requirements about healthy and nutritious school lunches. And in those federal regulations which govern that program, they specifically provide an And that exception is found at 7 CFR 210.10 and 1, and it says that schools must make . . . What do you mean 210.10 and 1? What do you mean? I'm sorry, the letter M as in mom. Okay. It says schools must make substitutions in lunches for students who are considered to have a disability and whose disability restricts their diet. And then there are some specifics about having a doctor's note to get that sort of accommodation. But that's not the case before you. Is that regulation cited in your brief? Yes. Okay. All right. You didn't really address the regulation that he cites in his brief. It's 34 CFR section 104.3.4 sub B. Are you familiar with that one? I am, Your Honor. Okay. Yes, we mentioned it in a . . . we referred to it in a footnote in our brief. I don't think that it bears the interpretation that Appellant's Counsel gives it, but I don't take any issue with the regulation. I think it very clearly states that the recipient shall ensure that the handicapped person participates to the maximum extent appropriate to the needs of the person. Those are pretty strong words, aren't they? To the maximum extent appropriate to the needs of the handicapped person in question. Yes. I agree those are very strong words. And I think if you look at that and think what would be the maximum extent to participate in the school lunch program, it would be participating in the school lunch program. And we would look at that lunch program and see that even under the federal regulations, there is an exception for students with disabilities and making substitutions to the dietary requirements of that program in order for those students to access it. And that is a case that I think if plaintiff pled that my client had not followed those regulations, would be a different matter. But that is not the case that is before you today. Actually, I think plaintiff has gone a step further, at least today, and talked about having somebody available to watch her as she ate. What's your response to that as far as the duty of the school to do that? Assuming now there were allergen-free lunches, she participated in the lunch program and was eating those lunches. Next step. If she's eating the allergen-free lunch in the school, would the school district have to provide somebody to watch her eat? I think that could conceivably be an accommodation that could be appropriate. I think it would depend on what constitutes watching the student. Is that somebody who is assigned just to sit and watch her? Or is that the typical lunchroom monitoring that goes on in a classroom, excuse me, in a cafeteria? So I think there are levels of that. I don't think there's an automatic obligation to sit and watch a student eat. I don't think that that's necessarily always a reasonable accommodation. I do think it would go to the specific facts that, you know, what the request was and how that was being implemented for that student. I'm going to switch you, if my brother and sister will permit. If we do vacate, it seems to me that, I'm not even going to discuss the reassignment of the judge. I think that's frivolous. But the amendment, it does seem to me that under 54C, he has alleged enough. The law is pretty clear that when you ask for an injunction and then you say, and other relief appropriate, that the court not only can but shall, under 54C, order whatever relief is appropriate for the prevailing plaintiff. Is that not true? Yes, Your Honor. I do believe that's true. And that statement was in the complaint. And I don't take particular issue with that particular statement of relief being added to the complaint. But it was not just that that was being added to the complaint. There were also several factual amendments. And the district court judge, in looking at that, ruled on two bases why that was not an appropriate amendment. Yes, he ruled it was futile. But, of course, if we remand, that's incorrect. Opens it back up, I understand. And the other one was Rule 16B. And it seems to me that ruling was wrong in light of 54C. Why am I not on base there? Well, Your Honor, the pretrial order that had been entered into this case had been set and allowed for a certain time period in order for appellant to make any amendments to the pleadings. And they didn't meet that burden. And then when they requested that amendment, they didn't make a good faith, they did not provide any sort of good faith reason to support the need for that amendment outside of the time frames. And there are several cases, which are cited in our brief, which do address that issue in terms of that timeliness and giving proper weight to the federal rules of civil procedure. And that if you skip those requirements, that basically you're not providing any sort of weight to the requirement in Rule 16B-4. And I can cite a couple of those cases for you if you would like. Was that a yes? No. Oh, okay. No. Your Honor, I believe that the complaint that is presented before you today with its bare factual allegations simply does not prove a duty for my client to be responsible for heeding the home-prepared lunch of this student. The rules are not extensive as to what is required for a pleading, but the minimum requirements have not been met in this instance. And we respectfully request that you affirm the decision of the district court. Thank you, counsel. Mr. Goldberg, you have reserved some time for rebuttal. I have, Your Honor. Your Honor, let me just read from the paragraphs of the complaint that I think are appropriate in this case. Paragraph 8. Plaintiff's allergies are so severe that her parents prepare food for her to take to preschool to greatly limit her allergies. The plaintiff's parents know the food is safe because the plaintiff has already eaten the food in their presence before it is packed in her lunchbox. Paragraph 9. That paragraph 8 seems to me almost to acknowledge that allergen-free lunches were prepared, but these parents want the extra assurance of preparing it themselves. Your Honor, I don't think there is an implication one way or the other, but the point that I am trying to make is that they have further concerns, and it is put out in the complaint. In paragraph 9, however, the food becomes cold before lunchtime, making it unappetizing and inviting the growth of bacteria that could cause Lillian to become sick. And then paragraph 10, which I think is the linchpin. Plaintiff's parents have brought their concerns to defendant's agents. They have offered to purchase a microwave. They are prepared to pay for the heating of their child's meals as though she had purchased a hot meal. More specifically, after plaintiff's father learned that defendant's agents were not heating his daughter's food or observing her eating, he told the assistant principal at his daughter's school that their actions sounded discriminatory. The point that he's concerned is about the safety, and that's why that sentence is in there. It is a discrimination if non-disabled students get hot meals and a disabled student cannot because of her allergy. And this really reminds me of the PGA versus Martin case. In that particular case, he wanted to have a golf cart so he could compete in the pro tournament, and everybody said that would change everything. The Masters is still being opened this weekend. The court said that it was necessary to give him a cart so he could compete. In this particular case, we're talking about her safety. That's what he's concerned about. And the concern is that if she gets non-allergen free food, you know, disastrous consequences may happen. That's the point. The regulation talks about the maximum extent necessary. This court has said in ADA cases that this regulation is not necessarily this regulation, but regulations under the ADA and the Rehabilitation Act are controlling unless they're demonstrably irrational. This is a liberal statute. The rule on liberal statutes and the regulations that interpret those statutes is that you're supposed to not strain to avoid to give the remedy. But the allegations of the complaint are not solely directed to allergen free food. They're directed to the fact that she can't get heated food except this particular way as long as the school district is not going to watch her eat. Counsel, let me put this to you. I take it that we had a square representation from counsel here in court that allergen free lunches were offered during those negotiations. I do not read your complaint to make anything more than a conclusory allegation about watching her eat. You have conceded in effect here that if the school district did offer allergen free lunches, that that would be a reasonable accommodation. And, of course, the law is they don't have to give you your accommodation of choice. All they have to do is offer a reasonable accommodation. I would think if you get a remand in this case and it turns out in fact that allergen free lunches were prepared, I would say you are very subject to sanctions. Your Honor, you've said that a number of times and I take this very seriously. But I would say it's almost an invitation for you to negotiate and settle this case. Your Honor, honest to God, this is the second time up. I have tried to negotiate this case. I really have. We just have been unable to resolve the matter. If I could negotiate this case out, I certainly would. It seems to me kind of ridiculous to be arguing the second time around about somebody giving. Have you gone to our mediation unit? Your Honor, we did the first time up. The second time up, I must tell you that having tried to negotiate it between that time and this appeal, we both decided that at that particular point that mediation was not going to work. I am sure they are willing to think about it. I certainly would be willing to go back. As a ready solution, even considering if you did allege enough to talk about watching your child eat, which I noticed one little phrase is all I noticed in the entire complaint. The focus was obviously on providing heated, allergen-free lunches. That should be easy to resolve. Obviously, they are not going to have to have somebody assigned to look solely at her. Pretty clearly, it ought to be enough if they have somebody watching who will be careful to at least spot check. Your Honor, I would say that if you were the mediator, you would probably get us to settle. But we have tried, and so far we have been unable to settle. You know, it is not much fun taking this case back and forth between the Eleventh Circuit. I haven't even gotten to discovery after three years. I certainly would love to get this case over with, and I certainly would love to settle. It is just that we haven't been able to do it. How old is she? Well, I think she is now about eight or nine years old. Is she still in the same school? To be honest with you, Your Honor, I don't know. I have been inclined to doubt it since I originally alleged preschool, and I am sure she is now old enough to be in school. She is eight or nine now? I think so, Your Honor. I might be wrong about that. You know, I really haven't concentrated on that part. So if we send this case back and you first start doing discovery, and by the time this case gets resolved, she will be held? Well, Your Honor, when I was a younger attorney, they talked about a U.S. Supreme Court involving the child labor laws where the Supreme Court just held on to the case until the child became an adult and then dismissed it as moot. And I worry about that happening. All right. I think we have the case. Thank you.